IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | | |
|---|---|---|
| VIVIAN BRAXTON and<br>OTIS BRAXTON, Husband and Wife,<br>and PEE WEE WISDOM CHILD<br>DEVELOPMENT CENTER, INC.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>APPERSON, CRUMP & MAXWELL,<br>PLLC, ROBERT DINKELSPIEL,<br>ROBERT DINKELSPIEL,<br>GLASSMAN, EDWARDS, WYATT,<br>TUTTLE & COX, P.C., MICHAEL G.<br>MCLAREN, BLACK, MCLAREN, JONES,<br>RYLAND, & GRIFFEE, P.C.,<br>DEMOSTHENES J. ALISSANDRATOS,<br>WALTER EVANS, PAUL J. SPRINGER,<br>GEORGE BELL, ROBIN RASMUSSEN, et al.)<br><br>　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No: 2:12-cv-02761-JTF/tmp |

ORDER GRANTING ALL DEFENDANTS' MOTIONS TO DISMISS;
ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL; ORDER
DENYING MOTIONS FOR RULE 11 SANCTIONS

Before the Court are Defendants' separately filed motions
to dismiss for failure to state a claim upon which relief may be
granted pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of
subject matter jurisdiction pursuant to Fed. R. Civ. P.
12(b)(1). DE [39], [41], [43], [44] and [46].[1] Plaintiffs filed a

---

[1] DE [39] Attorneys General George Bell and Albert Partee III's Motion to Dismiss for Failure to
State a Claim; DE [41] Honorable Judge Demonsthenes J. Alissandrados and Honorable Judge Walter
Evans' Motion to Dismiss for Failure to State a Claim; DE [43] Black, McLaren, Jones, Ryland &
Griffee, P.C. and Attorney Michael McLaren's Motion to Dismiss;  DE [44] Glassman, Edwards,
Wyatt, Tuttle & Cox, P.C.'s Motion to Dismiss;  DE [46] Apperson, Crump & Maxwell, P.L.C.'s  and
Receivers Robert Dinkelspiel and Robin Rasmussen's Motion to Dismiss.

collective response to Defendants' various motions to dismiss on December 3, 2012. DE [56]. Also pending before the Court are Defendants' motions for Rule 11 sanctions and a joint motion to disqualify Plaintiffs' counsel, Mr. Homer Cody. DE [59], DE [60] and DE [70].  At the parties' request, the matter was stayed on December 12, 2012.  DE [63].

On February 20, 2013, the Court conducted a hearing on all pending motions. For good cause, the Defendants' motions to dismiss this action for failure to state a claim and for lack of subject matter jurisdiction are **GRANTED**. Defendants' motions for sanctions are **DENIED** but Defendants' motions to disqualify counsel are **GRANTED,** rendering Plaintiff's motion to withdraw **MOOT**. Accordingly, the case is **DISMISSED** with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12 (b)(6).

## I.   FACTUAL BACKGROUND

On October 14, 1992, Plaintiffs, married couple Vivian and Otis Braxton, purchased and renovated property, where they subsequently opened a daycare center.[2] The Center was incorporated as a non-profit entity on April 2, 1993. It was leased by the Braxtons to Pee Wee Wisdom Child Development Center, Inc. ("the Center") and opened for business on February

---

[2] The Center was located at 3675 Winchester Road, Memphis, Tennessee, 38118.  The Braxtons maintained two other facilities, one at 4752 Millbranch Road and another at 1141 Whitaker. Both of these locations are irrelevant to the case at issue. DE [1-3]; p. 47.

1, 1994.   The Center received state funds to cover certain expenses such as payroll, equipment, rent, toys, and food, maintenance and transportation costs. Over 100 children were served by the facility whose parents made weekly co-payments to the Center for the daycare services.

As noted above, the Braxtons owned the property and the buildings where the Center was housed. Vivian Braxton was appointed executive director. James Wright served as the Center's accountant. Jean Johnson, Mrs. Braxton's sister, managed the facility's daily operations.

The Attorney General began an investigation in May 2002 into whether the lease of the land and buildings by Mrs. Braxton to the Center presented a conflict of interest pursuant to Tenn. Code Ann. § 48-58-302(a) and Tenn. Code Ann. §48-64-301, *et seq.*, the Nonprofit Corporation Act (NCA). Other potential violations included: 1) transactions between the Center and Mrs. Braxton; 2) operation of the facility as a sole proprietorship rather than as a non-profit agency; 3) lack of financial oversight and control leading to unauthorized expenditures; 4) failure to follow corporate formalities, i.e. lack of board of directors' approval of the facility's operations; 5)leasing the property to the corporation at rates higher than market value;

and 6) misapplication or wasting of corporate assets and public funds for personal use.[3]

While the investigation was pending, Plaintiffs, Vivian Braxton and Pee Wee Wisdom Center, filed an action for declaratory relief in Chancery Court on August 25, 2002. The matter was assigned to Chancellor D.J. Allisandrados.[4] (Case No. CH-02-1540) The Chancery Court ordered the creation of a receivership and appointed as receiver Robert Dinkelspiel on August 28, 2002. As a result, Mr. Dinkelspiel assumed operations of the Center and an estimated $532,868.62 in assets. DE [1-3]. Mr. Dinkelspiel filed a receiver's report on February 17, 2006 that documented various NCA violations. On August 28, 2006, the report was approved by the Chancery Court and a judgment entered against Mrs. Braxton for $296,190.50.[5]

---

[3] DE [1-3] Exhibit A1, ¶4a-c, ¶8(a)(4).

[4] DE [40-1] As the case in Chancery Court proceeded, the Attorney General filed a motion to dismiss the case arguing the court lacked subject matter jurisdiction over the Attorney General under the Nonprofit Corporation Act or any other act based on sovereign immunity, improper venue and for failure to state a claim.  See *Pee Wee Wisdom Child Development Center v. Robert E. Cooper, Jr.,* No. W2010-00484-COA-RIO-CV, 2012 WL 45563482, at 1 (Tenn. App. Ct. Feb. 14, 2012)

[5] DE [71-2]; Chancery Court Judgment Approving Receiver's Report dated August 28, 2006; The Chancery Court found in part: 1) Vivian Braxton had failed to perform her fiduciary duties as director and officer of the Center and failed to provide an accounting of assets and funds of the Center and 2) Vivian Braxton had failed to perform her fiduciary duties to ensure that the Center's resources were used to achieve the corporation's charitable purposes.

In the interim, and as a result of the investigations, Vivian Braxton was indicted and charged in State Criminal Court on August 14, 2003, with two counts of theft of property over $60,000; Class B felonies, and two counts of evidence tampering; Class C felonies. On December 2, 2003, Mrs. Braxton entered a guilty plea to one count of theft of property over $10,000.[6]

Plaintiffs appealed the Chancery Court judgment on September 26, 2006. In response, receiver Robert Dinkelspiel filed a motion to dismiss the appeal as untimely and unauthorized by the receiver. He also moved for disqualification of Mr. Cody from representing both Mrs. Braxton and the Center. On January 29, 2008, the Court of Appeals disqualified Mr. Cody from representing Mrs. Braxton and the Center; ordered the appointment of new counsel for the Center. Attorney Michael McLaren was subsequently appointed by the receiver to represent Pee Wee Wisdom Center.

While the first appeal was proceeding, Plaintiffs filed a motion in Chancery Court for permission to sue receiver Robert Dinkelspiel for fraud and malpractice. The Chancery Court denied

---

[6] Per the conviction, Mrs. Braxton was sentenced to three years, with six months to be served in the county workhouse and the remainder suspended; three years of probation, and restitution later to be determined by Chancery Court. State v. Braxton, No. W2004-02506-CCA=R3-CD, 2005 WL 3059435 (Tenn. Crim. App. Nov. 10, 2005).

the motion and the Braxtons filed their second appeal.[7] Receiver Mike McLaren's report was approved on July 13, 2009. The appeal was dismissed.[8]

Eventually, the case was remanded to Chancery Court for dissolution of the non-profit organization's affairs and for final termination of the receivership.[9]   On January 27, 2010, the Chancery Court granted the Attorney General's motion to dismiss the case in its entirety without prejudice for lack of subject matter and in personam jurisdiction, improper venue and for failure to state a claim.[10] However, the Attorney General's motion to transfer the case was denied. The Plaintiffs filed another notice of appeal on February 25, 2010.

---

[7] DE [1] ¶¶ 143, 148.  Otis Braxton also initiated a lawsuit against Mr. Dinkelspiel on or about September 29, 2006 which was dismissed with prejudice on November 16, 2006 by the Chancery Court.

[8] DE [1-4], p. 11.

[9] A dissenting opinion was issued in the Court of Appeals action that disagreed with the holding to remand the matter back to Chancery Court.  In the dissenting opinion, Judge Kirby indicated that Mrs. Braxton's lawsuit was initiated to derail the Attorney General's proposed dissolution of the non-profit center.  Mentioning the grounds for involuntary judicial dissolution of Pee Wee Childcare Center, i.e. the conflict of interest, her "borrowing" $120,000 from the Center, the failure to follow corporate formalities and the misapplication and wasteful management of corporate funds, Judge Kirby concluded the Attorney General's motion for transfer of venue or dismissal for lack of subject matter jurisdiction should have been granted pursuant to T.C.A. §4-4-104.

[10] DE [71-2]; EX A23; The case was transferred to another division for additional proceedings before the Honorable Chancellor Walter Evans after the retirement of the original Chancellor, The Honorable Demonsthenes J. Alissandrados in October 2006.

A second lawsuit, Case No. CH-09-2469, was initiated in Chancery Court on behalf of the Braxtons by Attorney Homer Cody on December 15, 2009. The case was dismissed with prejudice on February 18, 2010.[11]

Finally, on March 6, 2012, Plaintiffs filed a motion to dismiss and set aside all Orders previously issued by Chancery Court in the first case, CH-02-1540, pursuant to Tenn. Civ. P. 63 for failure to certify the transfer of the case to Chancellor Evans.[12] The Court granted Defendants' motion to strike the filing and denied the motion for sanctions against Plaintiffs' counsel, ending the matter on September 5, 2012.[13]

Before the Chancery Court and Appellate Court proceedings were resolved, Mr. Cody received a public censure by the Board of Professional Responsibility on March 16, 2012. Mr. Cody was censured pursuant to Tenn. Sup. Ct. R. 9 for continuing to represent clients having a conflict of interest, in direct violation of the Chancery Court order entered on January 29, 2008. DE [39-1].

---

[11] DE[1-4]; p. 58.

[12] DE[1-4], Exhibit A25.

[13] DE[1-4], ExhibitA34; Said Order again referenced that Mr. Cody "has a conflict in representing Pee Wee Wisdom Child Development Center, Inc. and Vivian Braxton."

Plaintiffs subsequently filed this action in Federal Court on September 5, 2012 against these Defendants for similarly alleged violations dating back to August 28, 2002. According to Plaintiffs' eighty-four page complaint, Defendants conspired to violate federal law, to wit: 18 U.S.C. §§ 1961-1965; 42 U.S.C. §§1983, 1985, and 1988, and state law violations of racketeering, fraud, extortion, corruption and conspiracy.[14]

Plaintiffs' pleadings contain numerous outrageously derogatory and disparaging allegations with respect to Defendants and the entire judicial process. For example, Plaintiffs refer to the individually named judicial Defendants as "Judicial Mobsters" and the "Tennessee Judicial Mafia" ("TJM"),[15] the court system as "The Judicial Black Hole"[16] and caption certain allegations in the complaint as "Cover-Ups"

---

[14] Typically, all factual allegations would be surmised from the complaint and accepted by the Court as true. In the instant case, the Court concludes the factual allegations in Plaintiffs' complaint should not be the sole basis for the factual background in the Court's order of dismissal. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2010).

[15] The Defendants include the three law firms, four attorney/practitioners and partners of these respective firms, two Judicial Officers, Attorney General Paul G. Summers, two Assistant Attorneys General of the State of Tennessee, one insuror and two receivers, Robert Dinkelspiel and Robin Rasmussen, as well as, any other parties and entities that "may come to light in subsequent discovery."

[16] DE [1], p. 6.

while referring to Plaintiffs as "Marks."[17]   A claim is also asserted on behalf of Plaintiff Pee Wee Wisdom to recover $320,000 in funds allegedly seized by the Defendants as rental payments while the Center was in receivership.

## II. <u>LEGAL STANDARDS</u>

A. <u>Rule 12(b)(1) for Lack of Subject Matter Jurisdiction</u>

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a claim for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion challenges the court's statutory or constitutional power to adjudicate the case. 2 Moore's Federal Practice §12.30[1](3rd Ed. 2010).  A dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of a plaintiff's case but merely a determination that the court lacks the authority to hear the case.  *Wilkins v. Jakeway*, 183 F.3d 528, 533-534 (6th Cir. 1999). Lack of subject matter jurisdiction may not be waived. *Id*.

When a Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction, the trial court must weigh the evidence and the plaintiff bears the burden of showing that jurisdiction exists. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516

---

[17] A "mark" in slang terminology is defined as a target or intended victim. Typically, this term is used in reference to the target of a hustler, hit man, or the like.  See www.urbandictionary.com

(6th Cir. 2004) citing inter alia, *RMI Titanium Co. v. Westinghouse Elec. Corp*, 78 F.3d 1125, 1133-35 (6th Cir. 1996)). If a court determines, based on the facts, that it lacks subject matter jurisdiction, the action must be dismissed. *Id.*

### B. Rule 12(b)(6) for Failure to State a Claim

Alternatively, a party may move to dismiss for failure to state a claim for which relief may be granted pursuant to Fed. R. of Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, the complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). The statement must give the defendant notice of the claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80(1957).

When determining whether to grant a motion to dismiss, all well-pleaded allegations are usually taken as true and must be construed most favorably towards the party opposing the motion. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but mere labels and conclusions are insufficient. *Twombly*, 550 U.S. at 555. However, the so-called *Twombly/Iqbal* standard requires the trial court to scrutinize and weigh the well pleaded facts to

determine if they present a plausible claim in light of its judicial experience and common sense. *Ashcroft v. Iqbal*, 556, U.S. 662, 129 S.Ct. 1937, 1950 (2009).

In this case, the Court finds that it lacks subject matter jurisdiction pursuant to Rule 12(b)(1) and that Plaintiffs have failed to assert claims against any of the defendants for which relief may be granted under Rule 12(b)(6). Because the parties have asserted similar grounds for dismissal, the Court will consolidate its analysis following the listing below of the defendants' motions to dismiss and their respective arguments for dismissal.

### III.  <u>MOTIONS TO DISMISS</u>

<u>Motion to Dismiss Attorneys General Partee and Bell</u>

Plaintiffs allege that Senior Counsel for the State Attorney General, Albert Partee and Assistant Attorney General George Bell participated in a conspiracy to defraud and extort Plaintiffs by committing multiple violations of wire fraud pursuant to 18 U.S.C. § 1343.[18]  The complaint alleges, that

---

[18] Attorney Paul Springer is also individually named as a defendant in the complaint. DE [1] ¶49, ¶347.  A summons of process was issued on September 12, 2012 to Plaintiffs. DE [17]. Neither a return of service nor an affidavit of service was electronically filed on the record for this defendant. Further, Defendant did not waive service of process either.  Mr. Springer has not answered the complaint nor was he included in the other Defendants' motions for summary judgment.   It should be noted that Plaintiffs failed to file any return of summonses for any of the named Defendants

under Partee's direction, General Bell and receiver Robert Dinkelspiel conspired to illegally overcharge rent, thereby stealing from Pee Wee Wisdom Childcare Center.[19] Both parties are being sued in their individual and official capacities for opening an investigation into the financial transactions of the Center, purportedly leading to the wrongful dissolution of the agency. The Braxtons allege that the Attorneys General illegally investigated the financial status of the non-profit agency. The complaint also alleges that under the direction of Partee and Bell, the receiver failed to pay rent to the Braxtons and falsely accused the Braxtons of overcharging the Center several hundred thousand dollars in rental payments.

Assistant Attorneys General Partee and Bell move to dismiss pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6).[20] They assert the following grounds: 1) failure to state a claim upon which relief may be granted; 2) the statute of limitations bars all claims; 3) the Rooker-Feldman doctrine for lack of subject

---

showing service had been properly effected. It is inconsequential since the case is to be dismissed. The primary allegation raised against Mr. Springer was that he, along with Chancellor Evans, the receivers, and the two law firms conspired to deprive Plaintiffs of their due process rights and access to the courts on or about October 11, 2006. DE [1] ¶¶ 288-289, 294, 300, 306. The record shows Mr. Springer filed a Notice of Appearance and was appointed by Mr. Dinkelspiel to represent Vivian and Otis Braxton after Mr. Cody was disqualified. See Notice of Appearance [1-4], p. 56.

[19] DE [1], ¶¶ 98-100.

[20] DE [39] and DE [40].

matter jurisdiction; 4) the Eleventh Amendment immunity granted state officials; and 5) the Tennessee statutory immunity for state officials in their individual capacities.

<u>MOTION TO DISMISS CHANCELLORS ALISSANDRATOS and EVANS</u>

Plaintiffs incredibly allege that both Chancellors held "sham judicial hearings" and used their "judicial authority to prevent Plaintiffs from exposing the criminal enterprise."[21] Both Chancellors are included in outlandish claims of civil rights violations, extortion, fraud and deceit, racketeering, wire and mail fraud, and various other Hobbs Act violations, money laundering and obstruction of justice allegations in their individual and official capacities. The response implies that Chancellor Evans failed to comply with Tennessee Rules of Civil Procedure §63, and lacked the minimum understanding of the prior proceedings before Chancellor Allisandratos.

Chancellors Alissandratos and Evans filed a joint motion to dismiss pursuant to Rule 12(b)(6). DE [41]. The Chancellors repeat the grounds for dismissal asserted by the other Defendants, as well as, their absolute judicial immunity from claims against them in their official and individual capacities. They add the complaint fails to assert how Chancellor Evans failed to comply with Tenn. R. Civ. P. 63. Finally, the

---

[21] DE [1] Complaint, ¶¶15-25; DE [56] Plaintiffs' Response to Defendants' Motions to Dismiss.

Chancellors assert under Fed. R. Civ. P. 8(a)(2), that all claims against the Defendants must be dismissed because the 409 paragraph complaint does not comport with the "short and plain statement" pleading requirement.

<u>MOTION TO DISMISS MICHAEL MCLAREN</u>

<u>& BLACK, MCLAREN, JONES, RYLAND & GRIFFEE, P.C.</u>

Attorney Michael McLaren was appointed by Robert Dinkelspiel to serve as counsel for Pee Wee Wisdom Center after the appellate court disqualified Homer Cody from serving as counsel. Mr. McLaren also represented Mr. Dinkelspiel in the latter action brought by Mrs. Braxton against him in Chancery Court.[22] Plaintiffs assert that Defendants McLaren and his firm, Black, McLaren, Jones, Ryland & Griffee, P.C. ("McLaren Defendants") conspired to commit RICO violations and theft which deprived Plaintiffs of their constitutional rights to due process by impeding their access to the justice system.

The McLaren Defendants move for dismissal pursuant to Rule 12(b)(6). In addition, they assert, similarly raised affirmative defenses of statute of limitations and *res judicata* preclusion, and failure to plead claims sufficient to establish a RICO claim under federal law. The McLaren Defendants also argue that Plaintiffs' dismissal with prejudice of these same claims in

---

[22] DE [43].

Chancery Court was a final and conclusive resolution of these claims in state court.[23] The McLaren Defendants finally assert immunity under the absolute litigation privilege.[24]

### MOTION TO DISMISS ROBERT COX and GEWTC, PC.

Robert Cox and Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. ("GEWTC") also move for dismissal of Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).[25] The Defendants rely on the prior ruling by the Chancery Court dismissing the case for lack of subject matter and in personam jurisdiction as well as other similar defenses raised by the other Defendants in this action.[26] The GEWTC Defendants also assert that, in order not to be time barred under Tenn. Code Ann. § 28-1-105, Plaintiff had one year from the entry of the Chancery Court order of dismissal in which to file their action.

In this instant case, the Chancery Court order of dismissal was entered on January 27, 2010. Plaintiffs charge Mr. Cox and GEWTC with conspiracy, fraud and deceit, federal and state civil rights violations, and RICO violations.[27]

---

[23] DE [1-4], p. 58.

[24] DE [43] and DE [43-1].

[25] DE [44] and DE [45].

[26] DE [45-2], Exhibit B.

[27] DE [1], Counts 9, 15-21, 30- and 32; ¶¶263-268, 287-310, 389-394, 402-409.

ROBERT DINKELSPIEL, ROBIN RASMUSSEN, & APPERSON, CRUMP

Robert Dinkelspiel and Robin Rasmussen served as appointed receivers overseeing the operations of Pee Wee Wisdom Center upon appointment by the Chancery Court. Plaintiffs argue that from September 1, 2002 through April 29, 2005, the pendency of the receivership, the Braxtons were never paid any rent. Alternatively, Plaintiffs argue the receivers overcharged Pee Wee Wisdom for past rents. Plaintiffs challenge Mr. Dinkelspiel's receiver's report that indicated Vivian Braxton had collected $296,190.56 in excessive rental payments. Finally, Plaintiffs assert the judgment against Mrs. Braxton, based on the receiver's report, was obtained without notice or a hearing of the motions. DE [41].

Defendants' motion to dismiss describes Plaintiffs' allegations as outlandish claims of fraud and deceit; the embezzlement claims are termed a "generic claim of 'theft'" under Tenn. Code Ann. §39-14-101 with no corresponding basis in fact.  The Defendants assert that Robert Dinkelspiel and Robin Rasmussen both served as appointed receivers entitled to immunity for their service as state officials. Further, they assert the case should be dismissed for failure to allege any facially plausible claims under Fed. R. Civ. P. 12(b)(6) and is

16

barred by the doctrines of *res judicata* and the applicable statute of limitations.[28]

DISCUSSION

1. Failure to State A Claim under Rule 12(b)(6)

Case law firmly establishes that mere labels and conclusions without a factual basis to support the elements of each claim are insufficient. *Bell Atlantic Corp.* 550 U.S. at 555. In this case, the allegations against the Defendants present no factually plausible claims. The complaint is inundated with unsubstantiated and highly inflammatory allegations. However, proof to support the elements of each claim is woefully lacking.

To note just a few examples: Plaintiffs allege, among other things, that Chancellor Allisandrados established the receivership for the sole purpose of establishing a depository for illegally obtained assets. (Complaint ¶93). The Complaint asserts Chancellor Allisandratos entered a judgment against the Braxtons in order to conceal the illegal taking of the monthly rental payments by the receiver (Complaint ¶112). The Complaint also alleges the case was transferred wrongfully to Chancellor Evans without Plaintiffs' knowledge, that Chancellor Evans intentionally failed to familiarize himself with the record, and

---

[28] DE [46] and DE [47].

knowingly failed to acquire jurisdiction of the case. (Complaint ¶¶ 134, 136-137). Plaintiffs assert that the receiver, without notice and by intimidation, illegally seized rental payments owed the Braxtons. (Complaint ¶105). The complaint also alleges the receiver violated the Plaintiff's Fourteenth Amendment rights by attempting to participate in the appeal process via affidavit testimony. (Complaint ¶¶130 and 131). Finally, Plaintiffs contend the receivers, Robert Dinkelspiel and Robin Rasmussen, the ACM law firm, along with Robert Cox and Richard Glassman all conspired with Chancellor Evans to deprive Plaintiffs of fair and impartial hearings. (Complaint ¶142).

These noted examples are just a few of the claims that are totally unfounded. All of Plaintiff's claims are supported only by wild speculation. Evidence to support Plaintiff's claims is non-existent.

## 2. Statutes of Limitations

Plaintiffs allege, *inter alia*, that Defendants conspired to commit acts of theft by failing to pay them rent during the 2002-2006 term of the receivership. The Defendants, Attorneys General Bell and Partee, argue that any "conceivable" claims asserted by the Plaintiffs are barred by the respective statutes of limitations and should be dismissed. DE [40]. This argument also has merit.

Under Tennessee law, charges of theft, fraud, or conversion fall under the statute of limitations applicable to tort actions. *Chase Manhattan Bank, N.A. v. CVE, Inc.,* 206 F.Supp.2d 900 (M.D.Tenn. 2002). The statute of limitations for civil claims is one year. *Kessler v. Board of Regents*, 738 F.2d 751, 754 (6th Cir. 1984). Tennessee's statute of limitations governing common-law fraud is three years. *Nichols v. Merrill Lynch, Pierce, Fenner & Smith*, 706 F.Supp. 1309 (M.D. Tenn. 1989); Tenn. Code Ann. §48-2-122(h). Even if the Court determined that Plaintiffs' claims survived the Rule 12(b)(6) motions, they would still be barred by the applicable statutes of limitations. The daycare center was in receivership from 2002-2006 and this action was brought in September of 2012. The limitations period for all actions enumerated in Plaintiffs' complaint are time-barred.

Similarly, the Court finds merit in the affirmative defenses asserted by Robert Cox and GEWTC that Plaintiffs' claims against GEWTC are time barred by Tenn. Code Ann. §28-1-105(a). *Sims v. Meridian Sr. Living, LLC*, No. 12-2898, 2012 WL 6115593 at 3 (W.D. Tenn. Dec. 10, 2012).

Plaintiffs' argument that the Defendants are still attempting to commit fraud is totally without merit and need not be further addressed.[29]

### 3. The Rooker-Feldman Doctrine and Rule 12(b)(1)

Attorneys General Bell and Partee correctly argue that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.[30] This argument is also raised by Chancellors Allissandrados and Evans, as well as the "McLaren" Defendants.[31]

A Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction. As such, the trial court must weigh the evidence to determine whether subject matter jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d at 516.

The *Rooker-Feldman* doctrine precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments. *Exec. Arts Studio v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) *reh'g en banc denied* (Feb. 25, 2005). The United States Supreme Court is the only federal court with jurisdiction to review any state court decision. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482, 103 S.Ct. 1303, 1311, 1315, 75 L. Ed. 2d 206 (1983); *Rooker v.*

---

[29] DE [1], ¶¶352-357.

[30] DE [40], pp. 8-10.

[31] DE [41] p. 1; DE [42] p. 9; and DE [43]: the Rooker- Feldman doctrine.

*Fid. Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923). "[U]nder the *Rooker-Feldman* doctrine, a litigant who loses in state court may not seek 'what in substance would be appellate review of the state judgment in the United States District Court, based on the losing party's claim that the state judgment itself violated the loser's federal rights.'" *Kafele v. Lerner*, 62 F. App'x 584 (6th Cir. 2003); *Turner v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 489 (6th Cir. 2005)(per curiam).

Plaintiffs received adverse final judgments in the Chancery Court for Shelby County on January 27, 2010 and on multiple appeals, ultimately ending on February 18, 2010. Plaintiffs' attempt to revisit the unfavorable state court rulings in federal court violates *Rooker-Feldman*. Accordingly, dismissal of this case for lack of subject matter jurisdiction is appropriate. See *Feldman*, 460 U.S. at 476.

For the same reasons, the Court grants the McLaren Defendants' motions to dismiss pursuant to Rule 12(b)(1). The state courts specifically ruled on these precise issues. Alternatively, the matters were dismissed by Plaintiffs and confirm that this court lacks subject matter jurisdiction. *Hood v. Keller*, 341 F.3d 593, 599 (6th Cir. 2003).

The arguments that the Defendants deprived Plaintiffs of federal rights without due process of law are also baseless and

without merit. A plaintiff must have a valid, non-frivolous underlying cause of action to bring a successful denial of access claim under 42 U.S.C. § 1983. *Flagg v. City of Detroit* 715 F.3d 165, 174 (6th Cir. 2013) citing *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).

### 5.   Eleventh Amendment Immunity

The Eleventh Amendment bars Title 42 U.S.C.A. §1983 claims against state officials who have acted in their official capacities, unless the state waives sovereign immunity or consents to be sued. U.S.CONST. amend. XI; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309-10, 105 L.Ed.2d 45 (1989).

The immunity clause of the Eleventh Amendment applies even when a state official is a defendant and the state is not named as a defendant. *Soni v. Board of Trustees of University of Tennessee* (6th Cir. 1975), *cert. denied*, 96 S.Ct. 2623. An exception to the Eleventh Amendment bar to suits against state officials exists when purely injunctive relief is sought against the state official acting in his or her official capacity. *Ex Parte Young*, 209 U.S. 123, 155-56, 28 S.Ct 441, 52 L.Ed 714 (1908), *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir 2007). In the case at hand, the Defendants have not waived sovereign immunity or consented to this action here in federal court. Although the Braxtons filed a prior unsuccessful

suit for declaratory relief against the Defendants in Chancery Court, the *Ex parte Young* exception to the Eleventh Amendment bar is inapplicable. The prayer for relief in this case only requests monetary damages for allegedly wrongfully withheld rental payments. As such, all governmental officials in this cause retain immunity.

### 6. State Law Claims barred by T.C.A. § 9-8-307(h)

Plaintiffs bring claims against Assistant Attorneys General Partee and Bell for actions taken while serving as state employees. Tenn. Code Ann. § 9-8-307(h) provides that state employees have absolute immunity for acts or omissions within the scope of their employment. Absolute immunity shields them from individual liability. *Shelburne v. Frontier Health*, 126 S.W.3d 838, 844 (Tenn. 2003). It is well settled that state prosecuting attorneys are immune from civil suits, so long as their actions were within the scope of prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 422-423, 96 S. Ct. 984 (1975). Again, these state employees are absolutely immune from liability.

### 7. The Rule 63 Challenge and Judicial Immunity

Under Tenn. R. Civ. P. 63, if a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed

23

without prejudice to the parties. *Canseco v. United States*, 97
F.3d 1224, 1227 (9th Cir. 1996); *Shofner v. Shofner*, 181 S.W.3d
703, 711-712 (Tenn. Ct. App. 2004). In Chancery Court,
Plaintiffs moved to declare null and void all orders entered by
Chancellor Evans on March 31, 2010.[32] The Court did not address
Plaintiffs' Rule 63 challenge, striking the motion based on the
finding that Mr. Cody remained unable to represent both
parties.[33] Subsequently on May 7, 2010, the Chancery Court issued
an Order again declining to Rule on the Rule 63 motion based on
the pending appeal.[34]

It is well established that judges enjoy judicial immunity
from suits arising out of the performance of their judicial
functions. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct 873 (1985);
Brookings v. Clunk, 389 F.3d 614 (6th Cir. 2004). As long as
the judicial officer is performing a "judicial act," and the act
falls within the subject matter jurisdiction of the judge,
absolute immunity from suit attaches. *Mireles v. Waco*, 502 U.S.
9, 112 S.Ct. 286 (1991) (judicial immunity). The ultimate burden
of proof is on the plaintiff to show that the defendant is not

---

[32] DE [1-4], Exhibit A25.

[33] DE [1-4], Exhibit A34.

[34] DE [1-4], Exhibit A26.

entitled to immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Judicial immunity applies in this case.

In this case, the Chancellors had subject matter jurisdiction over the dissolution of the nonprofit under the NCA of Tenn. Code Ann. §§48-64-302(a), 301(a)(4) and 303(a). Absolute immunity extends to the Judicial Officers similar to the immunity afforded the Assistant Attorneys General for performing duties as state employees pursuant to Tenn. Code Ann. §9-8-307(g); *Lucas v. State*, 141 S.W.3d 121, 138 (Tenn. Ct. App. 2004) The Court in *Lucas*, noted the language of this statute is limited to the common law immunities of state officials and employees. It is undisputed that Attorneys General Albert Partee and George Bell and Chancellor Allisandrados and Chancellor Evans were state officials and state employees.

Further, the immunity arguments are also valid in reference to Robert Dinkelspiel and Robin Rasmussen. These defendants' motion to dismiss is also granted. See Tenn. Code Ann. §§ 9-8-307(g)and 307(h) which provides absolute immunity from duties performed as state employees in their positions as state appointed receivers. *Scott v. Clay County, Tennessee*, 205 F.3d 867, 873-74, n.9 (6th Cir. 2000) and *Lucas v. State*, 141 S.W.3d 121 (Tenn. Ct. App. 2004).

## IV. <u>JOINT MOTION TO DISQUALIFY COUNSEL</u>

All of the Defendants have filed a joint motion asking the Court to disqualify Plaintiffs' counsel in this action.[35] DE [70]. The Defendants assert that in the related Chancery Court case, Mr. Cody represented both Vivian Braxton and Pee Wee Wisdom Child Development Center despite an obvious conflict of interest.[36] The Defendants argue that the Chancery Court concluded that Mrs. Braxton's actions violated the fiduciary duties owed to the Center as an officer and executive director in violation of Tenn. Code Ann. §§ 48-5-101 *et seq.* and §48-58-301, *et seq.* Also, the appellate court issued multiple warnings that Mr. Cody's representation of both parties was a conflict in violation of the TENNESSEE RULES OF PROFESSIONAL CONDUCT.[37]

During the motion hearing on February 20, 2013, Defendants argued the instant complaint raises the identical claims brought in the state court proceedings. DE [77]. Yet, Plaintiffs characterize Defendants' "standing" challenge as further evidence of racketeering, fraud and concealment.[38] The record

---

[35] DE [70]- Defendants' Joint Motion to Disqualify Homer L. Cody as Counsel for Plaintiffs filed on December 19, 2012.

[36] DE [70], Exhibit A, Chancery Court Docket No. CH-02-1540, Notice of Appearance.

[37] DE [70], Exhibit C - Tennessee Court of Appeals Order dated January 29, 2008, Docket No. W2007-01219-COA-R3-CV.

[38] DE [57], Plaintiffs' Rule 26(f) Status Report.

includes a copy of the complaint for declaratory and equitable relief filed as Case No. CH-02-1540 in Chancery Court on August 13, 2002.[39] The complaint raises the same issues presented in the instant case.

The record also contains the Release of Information issued by the Tennessee Supreme Court Board of Professional Responsibility on March 19, 2012. The Release indicates on March 16, 2012, Homer L. Cody, BPR #10755, was publicly censored pursuant to Rule 9, Section 4.4 of the Rules of the Tennessee Supreme Court for representing in the same action, parties having adverse interests. The censure noted that despite warnings by both the Court of Appeals and the trial court, Mr. Cody continued to simultaneously provide legal services to both parties.[40] As such, a warning was issued that Mr. Cody had violated Rule 1.7 (conflict of interest), Rule 3.1 (meritorious claims and contentions) and Rule 8.4 (misconduct) of the TENNESSEE RULES OF PROFESSIONAL CONDUCT.

Oddly, Mr. Cody acknowledges that this issue was raised both in the trial and appellate courts by attaching said Order

---

[39]DE [1-3].

[40] DE [1-4], Exhibit A33 - The record indicates the Board of Professional Responsibility complaint was initiated by Attorney Mike McLaren by letter to the Disciplinary Board on March 13, 2012.

to the complaint as Exhibit A17, DE [1-4]. In said Order, the Appellate Court independently ruled:

> ". . . This Court has already determined that there is an apparent conflict in Mr. Cody's representation of both parties. Because Mr. Cody failed to provide the Court with the information requested and there appears to be no other practical alternative, the Receiver's motion to disqualify is granted and attorney Homer Cody is hereby disqualified from representing either Vivian Braxton or PWW in this appeal or any other matters relating to this litigation." **It is SO ORDERED.**

Moreover, the Appellate Court's Order referenced a prior order of August 27, 2010, that directed Mr. Cody to refrain from representing Mrs. Braxton and Pee Wee Wisdom, purporting to represent them, ghostwriting or submitting any pleadings on their behalf "either now or in the future." Nevertheless, Mr. Cody represents both Vivian Braxton and Pee Wee Wisdom Center in this federal proceeding raising the same legal premises leading to his prior public censure.   The Court adopts the reasoning and findings of the Appellate Court.

This Court finds that Mr. Cody must be disqualified from representing the Plaintiffs in the instant proceeding, which concerns the same matters heard and resolved by state court tribunals on more than one occasion.   For the foregoing reasons, Defendants' motion to for disqualification of Plaintiffs' counsel is **GRANTED.**

The record shows that on January 23, 2013, Mr. Cody filed a motion to withdraw as counsel and requests the appointment of new counsel for Pee Wee Wisdom Center in this matter.[41]   All Defendants filed a motion in opposition to Mr. Cody's motion to withdraw in order to have the remaining conflict of interest issue and imminent possibility of continued legal proceedings addressed by this Court. DE [76]. The motion to withdraw is DENIED as MOOT based on the Court's prior analysis and finding that Mr. Cody is disqualified.

## V. RULE 11 SANCTIONS

On December 3, 2012, Defendants, Robert Cox and Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. ("GEWTC") and Robert Dinkelspiel and Apperson, Crump, & Maxwell, PLLC ("Apperson Crump") separately filed identical motions for Rule 11 sanctions against Plaintiffs.[42] DE[59] and DE[60]. Defendants assert they sent by certified return receipt a formal request along with their proposed motion to Plaintiffs' counsel in an effort to have all claims dismissed twenty-one days prior to filing the

---

[41] DE [74].

[42] Similar motions were filed by Attorney Richard Glassman and Glassman, Edwards, Wyatt, Tuttle and Cox, PC to Disqualify Mr. Cody and for Rule 11 sanctions against the same in the Chancery Court Case No. CH-09-2469 closed on February 18, 2010, without the Court issuing a ruling on either motion. However, the Court again takes notice that the Tennessee Court of Appeals had ruled that Mr. Cody was disqualified from representing both Ms. Braxton and Pee Wee Wisdom.  The Complaint contains a copy of said Order attached as Exhibit A-17.

Rule 11 motion. DE [59-1] and DE [60-1]. Defendants collectively argue numerous grounds for Rule 11 sanctions including Plaintiffs' complaint: 1) has no basis in fact or law and was brought for improper purpose; 2) was intended to harass and result in needless expenses; 3) asserts unwarranted claims; 4) is improper as filed without leave against a court appointed receiver; 5) asserts no grounds for relief; 6) is barred by *res judicata*; and 7) is barred by the statutes of limitations.

The Court finds Plaintiffs and Plaintiffs' counsel, have all demonstrated incredibly poor judgment by abusing the judicial process with their overwhelmingly baseless and frivolous filings. Moreover, the blatant and total disregard of prior admonitions by the Tennessee Court of Appeals and the Tennessee Supreme Court Board of Professional Responsibility undoubtedly place counsel at immediate risk of sanctions by the Board of Professional Responsibility. Notwithstanding the above, this Court will refrain from imposing any monetary fines or sanctions pursuant to Rule 11.

## VI. <u>CONCLUSION</u>

Defendants' motions to disqualify counsel are **GRANTED**. Also, Plaintiffs' motion to withdraw as Counsel for Pee Wee Wisdom Child Center is denied as **MOOT.** DE [74]. Plaintiffs' Counsel is again **ORDERED** to refrain from filing any additional pleadings, motions, responses or cases on behalf of these

parties at any time, now and in the future. Regarding Defendants' motions to dismiss, the Court finds there are no factual bases to support any of Plaintiffs' claims for relief against the Defendants. As such, the case is **ORDERED DISMISSED with PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

**IT IS SO ORDERED** on this 13th day of August, 2013.

*s/John T. Fowlkes, Jr.*
**JOHN T. FOWLKES, JR.**
**UNITED STATES DISTRICT JUDGE**